John V. Simon, Esq. County Attorney, Niagara County
Your first assistant has asked whether Niagara County, not a charter county, may reapportion its legislature under section 10 (1) (ii) (a) (1) of the Municipal Home Rule Law and if so whether a reapportionment local law under that subclause would be subject to a referendum. Your first assistant concedes that the county can reapportion under subclause (13) of clause (a) and that a local law enacted under that subclause is subject to a permissive referendum under section 24 of the Municipal Home Rule Law.*
Clause 13 was added to the Municipal Home Rule Law in 1969 (L 1969, ch 834 as amended by ch 835). The reason for the clause was that, prior to that addition, non-charter counties had had no statutory authority to comply with the "one person-one vote" rule enunciated by the United States Supreme Court (Baker v Carr, 369 U.S. 186 [1962]; Gray v Sanders,372 U.S. 368 [1963]; Avery v Midland County, 390 U.S. 474 [1968]). Non-charter counties had a legislative body consisting of the town supervisor from each town regardless of its population. (If there was a city within a county, the city charter provided for supervisors to be elected to sit on the county board of supervisors.) This was the long-established form of government for counties. Unlike cities and villages, counties were not chartered and therefore did not have a tailored form of government. Beginning in the middle of the 1930's, counties were given power, limited at first, to adopt their own form of government. This power continued to be broadened, culminating in the broad charter power granted by section 33 of the Municipal Home Rule Law. Counties that did not follow the charter route were stymied by "one person-one vote". They could not change their board of supervisors, for they could change neither town government nor city charters.
If redistricting was required, only a court could provide for it by ordering the board of supervisors to establish a county legislative body that met constitutional standards. This could be accomplished by creating districts, either single-member or multi-member, or by preserving the board of supervisors but providing for weighted voting. (See, generally, Johnson, "An analysis of Weighted Voting as Used in Reapportionment of County Governments in New York State", 34 Albany L Rev 1 [1969].)
We are aware that in Iannucci v Board of Supervisors, 20 N.Y.2d 244, 250
(1967), the Court observed that "the boards should be directed to reapportion themselves in accordance with the powers granted to them by Municipal Home Rule Law (§ 10, subd. 1, par. [ii], cl. a, subcl. [1])." We do not read this as a holding by the Court that subclause (1) grants home-rule power to a county to supersede the form of government mandated by County Law, § 150. Rather, we read the statement as a direction to lower courts to order boards of supervisors to enact a local law "as if" subclause (1) granted them the power to change the form of their legislative body. This is supported by subclause (2) of the same clause: "In the case of a city, town or village, the membership and composition of its legislative body."
We are also aware that County Law, § 150 is not a general law as defined by the Municipal Home Rule Law since it does not apply "in terms and in effect" to "all counties other than those wholly included within a city" (§ 2 [5]). Section 150 applies only to non-charter counties. A municipality may supersede a State statute only in the exercise of a home-rule power granted by section 10 of the Municipal Home Rule Law. Section 10 grants power over "the membership and composition of its legislative body" only to cities, towns and villages.
Subclause (13) was added primarily to give non-charter counties statutory authority to apportion its legislative body. The Chairman of the Assembly Judiciary Committee, who introduced the bill that enacted subclause (13), said in the memorandum in support of his bill:
 "More important, apart from certain of the larger counties which had special structures or were adopting or amending their county charters, there was considerable doubt as to the power of the local governments to reorganize their legislature absent a judicial decree specifically directing such a change." (Bill Jacket, L 1969, ch 834.)
In that same Bill Jacket are similar statements by the Conference of Mayors, the Association of Towns, and the Office for Local Government.
Since yours is a non-charter county, you must use the power granted by subclause (13) in redistricting your county legislature if shifts in population require alteration of legislative districts. (We assume that you are not under a court order at this time to redistrict under 1980 census figures. If you are, the procedure to follow is whatever the court ordered.) A redistricting local law at the very least is subject to the permissive referendum provided for by section 24 (2) (j). If, however, you increase the number of legislators, the referendum becomes mandatory because the local law creates a new elective office (§ 23 [2] [g]). If you decrease the number of legislators, the referendum becomes mandatory because the local law abolishes an elective office (id.,
par[e]). This is the significance of the provision in subsubclause (e) of subclause (13) stating that a mandatory referendum is required if the local law proposes a change "in the form or composition of the elective governing body of the county."*
We conclude that a non-charter county has the power to reapportion its legislative body only by enacting a local law in accordance with section10(1)(ii)(a)(13) of the Municipal Home Rule Law. The local law is subject to a permissive referendum under section 24 (2) (j) of that law but under certain circumstances may be subject to a mandatory referendum.
* Section 24 authorizes referenda on petition. That is, a local law dealing with an enumerated subject does not become effective for a stated period of time during which voters may petition for a referendum. Paragraph j of subdivision 2 of that section authorizes such a referendum on a local law enacted under subclause (13), but also permits the governing body to submit the local law to a referendum absent a petition. This is a "permissive referendum". Normally, the right to a referendum on petition exists if the governing body does not exercise its power to call for a referendum. See, for example, County Law, § 101; Town Law, § 90; Village Law, § 9-900.
* We note that a local law changing the weighted voting of a traditional county board of supervisors would not change the "form or composition" of the board and therefore would not be subject to a mandatory referendum. This is true even though one could argue that a decrease in the number of votes which a supervisor would be entitled to cast "curtails [a] power of an elective officer" (§ 23 [2] [f]). As we noted earlier, counties have no home-rule power over the "form or composition" of their legislative bodies unless they go the route of adopting a charter or acting under subclause (13). That subclause is the only source of "weighted-voting" power. The subclause distinguishes between "form or composition" and "voting powers of individual members". Thus, weighted voting is not a change in form or composition of a legislative body; only such a change would be subject to a mandatory referendum and only if another provision of law, such as section 23 (2) (e) or (g), required it.